## UNITED STATES v. FOONG KING.

### SAME v. FAH CHUNG.

(District Court, S. D. Georgia, N. E. D.   June 17, 1904.)

1. ALIENS—CHINESE EXCLUSION ACT—CONSTITUTIONALITY.

Section 13 of the Chinese exclusion act of September 13, 1888, c. 1015, 25 Stat. 479 [U. S. Comp. St. 1901, p. 1317], which authorizes the arrest and deportation by order of a commissioner of persons charged with being Chinese persons unlawfully in this country, is constitutional.

2. SAME—CHINESE NATIVES OF HONGKONG.

The fact that a Chinese person emigrates to the United States from Hongkong, or even that he is a native of that colony, does not prevent his being subject to the provisions of the Chinese exclusion act of September 13, 1888, c. 1015, § 13, 25 Stat. 479 [U. S. Comp. St. 1901, p. 1317].

Appeals from Orders of Deportation Made by Commissioner. Consolidated and tried by consent.

William R. Leaken, Asst. U. S. Atty.

C. E. Dunbar, for defendants.

SPEER, District Judge.   The questions before the court in these cases arise upon appeals from the order of George K. Calvin, United States Commissioner for the Northeastern Division of the Southern District of Georgia, rendered at Augusta, by which that officer directed the deportation, conformably to the statute, of both of the appellants.   The appeals were tried together by consent, and, while separate decrees will be entered, one opinion will suffice for both.

It is evident from the facts that both of the appellants are "Chinese persons," and both belong to the cooly or laborer class.   The evidence shows that neither of them is within the excepted classes which are permitted to reside in the United States.   Neither possesses nor pretends to have any certificate conformable to law, which is the required evidence of their title to residence here.   Under reiterated decisions of the Supreme Court of the United States, and by the plain terms of the act, the court is constrained to order their deportation to China, unless some good legal reason is presented which will enable us to avoid this severe alternative.   A hearing de novo on the appeal was had.   Counsel for the defendants insist that the thirteenth section of the act of September 13, 1888, c. 1015, 25 Stat. 479 [U. S. Comp. St. 1901, p. 1317], by virtue of which the defendants were arrested and carried before a commissioner, is unconstitutional, and as authority for this contention the case of United States v. Coe (D. C.) 128 Fed. 199, decided at chambers by District Judge Wing, of the Northern District of Ohio, was cited.   The opinion of the judge in that case declares the act unconstitutional for the reason that persons other than Chinese may, by virtue of its provisions, be arrested and possibly deported.   The learned judge there also refused to make his finding the judgment of the court, for the reason that

¶ 1. See Aliens, vol. 2, Cent. Dig. § 74.

¶ 2. Citizenship of the Chinese, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.

from his construction of the act the appeal was to the judge of the District Court as an individual, and this did not import that his was the action of the court itself. Unhappily for this contention, the case was carried by appeal to the Supreme Court of the United States, and was there argued by Solicitor General Hoyt and Assistant Attorney General McReynolds for the United States. It does not appear that there was any appearance for Jock Coe, Bong Meng, and Woo Joe, the Chinese whose rights were involved. The case was decided by the Supreme Court on the 2d of May, and the opinion rendered by Chief Justice Fuller appears in the Advance Sheets of the Lawyers' Co-operative Publishing Co., June 1, 1904, p. 629 et seq. In the Supreme Court the decision of the District Judge of the Northern District of Ohio was reversed. 24 Sup. Ct. 629, 48 L. Ed. 931. The matter directly before the court was whether an appeal to the District Judge was an appeal to the District Court, and this the Supreme Court answered in the affirmative. However, the action and opinion of the District Judge was before the Supreme Court of the United States. That court must have understood that the pertinent clause of the Chinese exclusion act of September 13, 1888, c. 1015, § 13, 25 Stat. 479 [U. S. Comp. St. 1901, p. 1317] was challenged and involved in the record before it, and, after reading the extensive and critical review of the act and its authorities made by Chief Justice Fuller, it is quite impossible to doubt that the constitutionality of the act was recognized as settled. Indeed, in the strenuous and continued resistance to the deportation of Chinese made in many cases, in all of which the sovereign power of the United States to exclude aliens of an objectionable character has been upheld, such power is no longer open to question. It can scarcely be questioned that the power of deportation of aliens is one inherent to government, and like the power of naturalization must reside in the general government, and not in the states. With regard to the latter power, said the Federalist, No. 32:

"This power must necessarily be exclusive, because, if each state had power to prescribe a distinct rule, there could be no uniform rule."

And said Mr. Justice Story, in his Commentaries on the Constitution, vol. 2, p. 46:

"If aliens might be admitted indiscriminately to enjoy all the rights of citizens at the will of a single state, the Union might itself be endangered by an influx of foreigners hostile to its institutions, ignorant of its powers, and incapable of the due estimate of its privileges."

Because of such apprehended danger as that described by the illustrious commentator on the Constitution, Congress has sought to protect the country by the Chinese exclusion act, and, however harsh its provisions may seem to those who are accustomed to the practically unbounded liberty of the American citizen, the obligation of the law upon the judicial officers of the government can no longer be questioned. Said Chancellor Kent in his Commentaries, vol. 1, p. 35:

"If any government deems the introduction of foreigners or their merchandise injurious to those interests of their own people which they are bound to protect and promote, they are at liberty to withhold the indulgence. The entry of foreigners and their effects is not an absolute right, but only one of

imperfect obligation, and it is subject to the discretion of the government which tolerates it."

Besides, in the case of Fong Yue Ting v. U. S., 149 U. S. 698–763, 13 Sup. Ct. 1016, 37 L. Ed. 905, this power of the government is expressly upheld. This decision has been followed in many cases. See 12 Rose's Notes on U. S. Reports, 422.

An attempt has been made to show that the Chinese before the court are natives of Hongkong. This has been a British possession since 1843. The appellants are both apparently young men, and for these reasons it is insisted that they are British subjects, and not amenable to the provisions of the Chinese exclusion act. This, it is contended, is dependent on a treaty between this government and the Emperor of China. The Chinese exclusion act, however, as now of force, is independent legislation of Congress. It is not controlled, but merely assisted, by the treaty with China. Besides, while Hongkong is a naval station and crown colony of Great Britain, its local government has experienced many difficulties from the remarkable development of cooly immigration through that port. It is, indeed, a seaport from which swarms of Chinese laborers have embarked for this and other lands. It does not follow, therefore, that a Chinese person from Hongkong is a British subject. Nor under the provisions of the law would this seem material. By section 15 of the act of Congress of July 5, 1884, c. 220, 23 Stat. 118 [U. S. Comp. St. 1901, p. 1311] it is declared that "the provisions of this act shall apply to all subjects of China and Chinese, whether subjects of China or any other foreign power."

For these reasons a decree of deportation will be granted in accordance with the provisions of the law.